Chief Judge Breitel (dissenting).
I dissent and would affirm the orders of the Appellate Division in the Gas Company and the Airlines cases, and reverse the order in the Hospital case and annul the determination.
The General Elec. Co. case, decided recently by the United States Supreme Court (General Elec. Co. v Gilbert, 429 US 125), of course, is not determinative or even influential in consideration of the issues in these appeals. General Elec. involved a different statute and a disability insurance program not affected, in any way, by any Federal statute concerned with disability insurance for employees in either public or private employment. On the other hand, these appeals arise from the State statute governing discrimination, the Human Rights Law (Executive Law, § 296), and under the State statute providing for disability benefits for disabilities unconnected with employment (Workmen’s Compensation Law, art 9). The two sets of appeals share in common the absence of a constitutional limitation proscribing one result or mandating the other. The last is key to these appeals. The question is purely legislative and the standards to be applied are those appropriate to judicial review and not those appropriate to initiating social-economic policy or projecting, however right, the social-economic preferences of the court’s members.
*92 I dissent not because I accept any license in public or private employment to discriminate invidiously against women. I do so because, as the majority would undoubtedly recognize, and it is but a truism, differences among human beings, either as individuals or as members of a class, may be acknowledged and acted upon without legal or moral vulnerability, provided the action is neither based on nor the effect of a concept of inferiority or the imposition of a disadvantage inappropriate to the difference. More important, I do so because the Legislature, the body responsible for making such policy decisions, has explicitly sanctioned the exclusion of pregnancy benefits from disability benefits coverage.
The Human Rights Law (Executive Law, § 296, esp subd 1, par [a]) makes illegal in private and public employment invidious discrimination based on race, national origin, creed, sex, marital status, disability, and age. But the statute’s proscriptions are not absolute, and it does not purport, as indeed it could not properly, to be a higher law outranking all other statute law.
Exceptions appear in the Human Rights Law itself. The young may be denied access to liquor (Executive Law, § 296, subd 1, par [f]). Neither the very young nor the aged are entirely protected against employment discrimination (see § 296, subd 3-a). Religious institutions may employ only those of their own faith (§ 296, subd 11).
Other statutory exceptions, not expressed in the Human Rights Law, are equally well established. For example, public employee retirement plans discriminate on the basis of age, even for those not yet 65, by imposing a minimum age requirement (Retirement and Social Security Law, § 2, subd 18; § 70, subd a; § 71, subd a). And this court has recognized that even race and ethnic origin may be given a preliminary preference in recruitment or selection in order to accommodate for discriminatory wrongs of the past or present (Alevy v Downstate Med. Center of State of N. Y., 39 NY2d 326, 336-337; see Matter of Broidrick v Lindsay, 39 NY2d 641, 647, 649).
Hence, even if section 296 of the Human Rights Law were the only statute to which the court was bound to look, the issue in these cases would be troublesome. Complicating the matter is the unique character of pregnancy and all its incidents. ,
There is no longer any question that pregnancy-based classi *93 fications of the type challenged in these cases pose no constitutional difficulties (Geduldig v Aiello, 417 US 484, 486-487, 496497). And as the Supreme Court has recently decided, pregnancy-related disability exclusions are permissible under title VII of the Federal Civil Rights Act, a similar antidiscrimination statute (General Elec. Co. v Gilbert, 429 US 125, 133-140, supra; US Code, tit 42, § 2000e-2).
To be sure, in cases involving public school employment, this court, interpreting section 296, has held that pregnant teachers may not be compelled either to take a disability leave before they are in fact disabled or to extend their leave beyond the period during which they were actually disabled (Board of Educ., East Williston v New York State Div. of Human Rights, 35 NY2d 673; Board of Educ., Oyster Bay & Babylon v New York State Div. of Human Rights, 35 NY2d 677). Of course, these cases involved archaic discriminations against women, mandating involuntary disemployment, which, on the one hand, regarded obvious pregnancy as indelicate for young children to behold, and on the other hand, paternalistically required mothers to tend their newborn personally. The effect was impermissible, even if unintended or based on outdated concepts of propriety.
Then, in another public school case, this court determined that so long as teachers generally were entitled to use sick and sabbatical leaves to cover periods of temporary physical disability, the same could not be denied if by chance the period of disability were caused by pregnancy (Matter of Board of Educ. v State Div. of Human Rights, 35 NY2d 675). In light of the City of New York (35 NY2d 675) case, it might be argued that denial of disability benefits in this case would work a discrimination between public school employment and other, private, employment. And, in fact, it would. But public and private employment are different in many respects, and the Legislature is entitled to recognize those differences. It has done so.
Because public employment and private employment are different, a discrimination in policy between them is not necessarily an invidious one, obviously the only kind prohibited by the Human Rights Law, although not so expressed. The costs of benefits in public employment are borne by the general taxpayer; they are not in private employment. Most important, private employers, except for regulated monopolies, are competitive with one another, not only within the State *94 but within the Federal Union, and often, for a State like New York particularly, within the trading world. Then, too, there is a substantially greater risk in the case of private employment as compared with public employment that certain burdens may discourage, beyond effective detection, the employment of the members of the benefited class. This does not mean that the choice to provide coverage, onerous though it may be to private employment, should not be made, as was done with child labor and, within legislated limits, discrimination for age, sex, race, creed, or national origin. The point is that the choice is a legislative one to be made deliberately and should not be the product of judicial extrapolation based on social and economic preferences, whether in the majority or minority of this court.
The Legislature made that choice by providing that the Disability Benefits Law should apply only to private employment, and then only to certain private employments. Hence, the Human Rights Law is not the only statute involved in the cases now before the court. On the contrary, these cases must be resolved by reference to explicit provisions in the Disability Benefits Law (Workmen’s Compensation Law, § 205):
"No employee shall be entitled to benefits under this article: * * *
"3. for any period of disability caused by or arising in connection with a pregnancy”.
This provision, not involved in any of the previous pregnancy-related cases, should be dispositive of the issue now presented. It reflects the legislative choice, whether that choice was right or wrong on social-economic grounds.
In 1949 the State adopted an innovative and forward-looking program to provide disability benefits for disabled workmen not entitled to workmen’s compensation (Workmen’s Compensation Law, art 9). The counterpart to workmen’s compensation in the proper sense of the word, it was to cover illness or disease and the consequences of accidents not arising in or out of the course of private employment. It was not to take care of "disabilities” due to other conditions which prevented one from engaging in compensated employment. It did not cover public employment. (See, generally, Governor’s memorandum on approval of Workmen’s Compensation Law, art 9, NY Legis Ann, 1949, pp 263-264.) Thus pregnancy was deliberately and explicitly excepted from coverage, and that has been the law since 1949 (see 1949 Report of Joint Legisla *95 tive Committee on Industrial and Labor Conditions, NY Legis Doc, 1949, No. 67, p 44). Even since 1965, when the Human Rights Law was amended to prohibit sex discrimination, repeated efforts in the Legislature to eliminate the pregnancy exclusion of section 296 have failed, undoubtedly because the change would not conform with the Legislature’s view of the pattern and philosophy of the Disability Benefits Law (see 1965 Assembly Intro No. 856; 1971 Assembly Intro No. 4000; 1972 Assembly Intro Nos. 4000, 11269; 1972 Senate Intro No. 9370; 1973 Assembly Intro Nos. 1286, 4871, 5286; 1973 Senate Intro No. 2041; 1974 Assembly Intro Nos. 1286, 5286; 1974 Senate Intro No. 2041). The bills and the efforts to amend were controversial, debated by legislative supporters and opponents to the liberalizing measures. These were not bills merely filed and printed to mollify noisy proponents (compare New York Civil Liberties Union, Legislative Memorandum No. 8, Jan. 28, 1972, with Commerce & Industry Association of New York, Inc., Newsletter 72:8, Feb. 24, 1972). The bills were never passed, or even brought out of committee, despite publicity and strenuous efforts.
It is of interest, and relevant analytically, that while the Disability Benefits Law was first being considered, and later as amendments were being proposed, it was noted in legislative studies that there were some States in which there were statutes providing for pregnancy disability benefits (see 1948 Report of Joint Legislative Committee on Industrial and Labor Conditions, NY Legis Doc, 1948, No. 53, pp 35, 69-71; NJ Stat Ann, §§ 43:21-29, 43:21-39, subd [e]; RI Gen Laws, § 28-41-8). There were even a few States that required that pregnant employees for periods before and after delivery not be employed (Summary of State Labor Laws for Women, United States Department of Labor, March, 1969). In this State unemployment insurance benefits were denied to pregnant women unless they could show that they were still available for employment (Matter of Steiner [Catherwood], 31 AD2d 669, affd 25 NY2d 819).
These differences in treatment show that there are many choices to be made in providing for pecuniary benefits for pregnant working women. These are legislative choices, influenced by all sorts of economic and social factors, not excluding that which determines whether fellow employees, employers, the consumers of particular goods and services, or the general taxpayers should bear the financial burden of whatever costs *96 such benefits entail. Influencing the choice of factors, of course, is the competitive consequence on industries in a State which adopts one policy or another. It is not the function of the court to decide which legislative choices were wise or unwise, or right or wrong, by moral, economic, or social standards.
The majority’s attempt to circumvent the clear expression of the legislative will by appealing, implicitly if not expressly, to the "higher law” values of the Human Rights Law is analytically unsound. The approach engenders a dangerous trend toward judicial arrogation of the legislative function.
It matters not how the majority characterizes its approach. The fact is that the only way to reach its conclusion, other than by adopting the properly rejected implied repeal argument, is by engaging in a ranking of statutes. For the virtual nullity the majority makes of the pregnancy exclusion can be explained only by subordinating the specific provisions of the Disability Benefits Law to the general policies of the Human Rights Law.
By finding a basis for ranking statutes as higher or lower, the majority engages in a jurisprudentially and intellectually dangerous excursion. I had always supposed, and still believe, that it is the exclusive function of the Legislature, within constitutional limits, to rank statutes, establish priorities, repeal or modify (impliedly or expressly), and determine what is and should be the legislative policy of the State. Indeed, I had always supposed, and still believe, that, putting aside controversial concepts of "natural law” and, in the Anglo-American jurisprudence, the unique tradition of the common law, there were only three ranks of law, Constitutions, statutes, and local law or regulations authorized by statute or Constitution. I cannot accept judicial subranking within these categories, substituting, as it does, the subjective or transitory views of a particular majority of a court for the mandates of those entrusted with legislating State policy. The danger posed by the majority’s analysis is not to the purity of terminology, classification, or concept, but to the integrity of a judicial process which does not recognize its limits.
In section 205 of the Disability Benefits Law, the Legislature has spoken with clarity and precision. It has been informed repeatedly of the purportedly discriminatory effect of the pregnancy exclusion, yet it has ¿ever acted to change the provision. Under these circumstances, the result rendered by *97 the majority is nothing less than a direct and unwarranted overruling of legislative directions. If there is no repeal, there must be implication, and if there is neither the "law-making” function of a court is abused.
Accordingly, I dissent.
Judges Gabrielli, Wachtler, Fuchsberg and Cooke concur with Judge Jones; Chief Judge Breitel dissents and votes to affirm in a separate opinion in which Judge Jasen concurs.
In Brooklyn Union Gas Co. v New York State Human Rights Appeal Bd: Order reversed, with costs, the order of the Human Rights Appeal Board confirmed and cross motion for enforcement granted.
In American Airlines v State Human Rights Appeal Bd.: Order reversed, with costs, and the order of the Human Rights Appeal Board confirmed.
In State Div. of Human Rights v Crouse-Irving Mem. Hosp.: Order affirmed, with costs.